## WOOTON v. BETHEA, SHERIFF.

In Banc. June 12, 1950.

No. 37831 (47 So. (2d) 158)

**E. J. Currie, Earle L. Wingo** and **Francis Zachary,** for appellant.

**George H. Ethridge,** Assistant Attorney General, for appellee.

**Smith, J.**

Appellant is in jail on a charge of armed robbery. Section 2367, Code 1942. He was denied bail on a habeas corpus petition, which was dismissed.

This appeal presents four assignments of error relevant to the dismissal of appellant's petition. They may be consolidated into two complaints. First, the trial judge erred in failing to discharge appellant; Second, the trial judge erred in failing to enlarge appellant on bail. We overrule the first.

The facts in the record reveal that on the evening of April 7, 1950, in the City of Hattiesburg, a citizen thereof drove to his home about seven o'clock. He stopped his car in front of his garage, got out, and a man with a handkerchief over his face, armed with a pistol, warned him to make no outcry upon penalty of death. This unfortunate gentleman was the sole witness testifying as to the facts occurring at the scene of the robbery. The robber demonstrated and obtained his purse, and, at pistol point marched the witness in front of him into his residence. So, the victim up to that point obtained no view of the bandit. The only glimpse the witness ever had of the marauder according to his own testimony, was for ten or fifteen seconds, just before being bound hand and foot, and blindfolded upon a bed. While in that position, he heard the intruder jerk the telephone off the wall, open drawers, and ransack the premises generally.

Finally, the witness began to discuss the situation with the robber, and ultimately convinced him that in a few minutes a committee of fifteen men was about due at his home. The robber then left, after stealing also some articles of personal property. The victim testified that he was very nervous and thoroughly frightened, which was quite natural under the circumstances. He also said that he never had heard the man's voice before, which was sought to be disguised. The whole thing was over in thirty minutes.

After the thief departed, the victim freed himself, and upon alarm being given, police officers arrived. He said, either to the officers or at the committing trial, and which

he repeated at this habeas corpus proceeding, that the robber was forty years old; that his hair was blond; that he weighed about two hundred or two hundred and fifteen pounds; described his clothes, and the stolen articles. He also pointed out where the bandit stood during the scene at the garage.

A moulage was made of a footprint found there, which did not match the shoes of the accused; fingerprints were lifted and sent to the Federal Bureau of Identification at Washington, which reported that they did not match those of the appellant. The robber wore no gloves. Appellant had brown, not blond hair; he was twenty-five, not forty years old; weighed one hundred eighty, not two hundred or two hundred and fifteen, pounds. Appellant was represented by the witness to have worn a brown moleskin sportcoat, whereas proof was to the effect that he had never owned such a coat.

When appellant was requested to come to the police station, (not being under arrest,) he went in a few minutes, and willingly. The victim was sent for, and before the alleged robber spoke, he identified him as the guilty man. The bandit's voice was a major factor in his identification of appellant later, although it was admittedly disguised during the robbery. In addition, the witness said that his robber was armed with a "shiny" thirty-eight revolver, whereas appellant, as required by law, had registered in the sheriff's office, only a blue steel automatic of foreign make.

A search warrant was obtained and the home of appellant searched, where the blue steel automatic was found,—but no "shiny" revolver. The officers failed to discover there any clothes such as the witness said the robber wore; nor did they locate there any of the articles of personal property stolen at the time of the robbery.

Appellant and his wife testified that he was at home with her and their baby at the exact time it was claimed

he was engaged in the robbery, both explaining their recollection of the time and date reasonably and plausibly. He also denied his guilt.

Appellant offered in evidence a letter from the Federal Bureau of Identification to the effect that no fingerprints lifted on the robbed premises matched his. However, on objection, the trial court excluded this letter. It is argued here that it was competent under Section 1745, Code 1942. We do not think so. It contained no certificate. It was merely a letter announcing that the fingerprints submitted had been compared with those of appellant, "but no identification is effected." There is a signed stipulation on file in this Court that we may consider such letter on this submission. Nevertheless, we have reached our conclusion, without the aid thereof. This matter of certificates is discussed in Wigmore on Evidence, Third Edition, Section 1635a; Section 1637; Section 1678a; Illustrations and Notes at Page 533, Vol. V. Manifestly, the letter in the case at bar would have been of great evidentiary value to appellant, but we think the trial judge correctly excluded it. This document did not contain copies of the two sets of fingerprints compared, nor a certificate thereto such as the law requires; was merely a letter and not a copy of anything. As stated, it was incompetent.

Appellant was arrested one day before the grand jury, then in session, adjourned without having returned an indictment against him. This was explained by the officers as due to lack of time to complete their investigation. Much is said about this fact in appellant's argument, but under the circumstances it is not important to decision on the present issues before us. There was no proof of any investigation of this case by such grand jury. In re Jefferson, 62 Miss. 223.

Under the statute on which this prosecution is based, the jury is empowered to sentence an accused to death in a proper case. The constitution of 1890, Sec. 29, provides: "Excessive bail shall not be required and all per-

sons shall, before conviction, be bailable by sufficient sureties, except for capital offenses when the proof is evident or presumption great.''

■■ ''It is the theory or the policy of the bail statutes generally to encourage the granting of bail in proper cases.'' 8 C. J. S., Bail, Section 30, page 50. Under this text is cited Ex parte Oliver, 127 Miss. 208, 89 So. 905. In Ex parte Mormon, 112 Miss. 15, 72 So. 835, we reversed the lower court and admitted the appellant to bail here. This Court there said: ''After considering the testimony in this case . . . we are of the opinion 'that the proof of defendant's guilt is not evident, nor the presumption great.' ''

Long ago we made the following announcement: ''On examination of the evidence in the cause, now appearing on the record, we think it, perhaps, most consistent with the liberal policy of our Constitution and laws, to allow this application for bail. We refrain from any comment on the testimony, or the expression of any opinion as as to the guilt of the accused, or the degree of his offense. We do not intend to intimate an opinion that he may not be guilty of murder, or that he may not be wholly innocent. This will be the province of the jury who shall hear the evidence. We wish it understood, that on application for bail, we may grant the application, even in cases where the jury might, and perhaps ought, on the same evidence, to render a verdict of guilty for murder. So much depends on the incidents of a trial by jury, the manner of the witnesses, their intelligence, their seeming bias or fairness, that cannot be brought before this Court, which yet should have a material bearing on the weight of evidence, that we deem it unsafe, that the opinion of the High Court in granting or refusing bail should be adopted as a criterion for the jury, by which to determine the guilt or innocence of the accused.'' Moore v. State, 36 Miss. 137.

Since the proof of defendant's guilt is not evident or the presumption thereof great on the record before us, we have concluded that the lower court should have granted him bail. Therefore, the judgment of the lower court is reversed and the appellant is to be released from custody upon entering into bail in the sum of $2,000, conditioned according to law, the sureties to be approved by the Sheriff of Forrest County, Mississippi. Moore v. State, supra.

Reversed and appellant admitted to bail.